IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BRYAN JOSEPH SCHMITTLING,**

**Plaintiff,**

**v.**

**THE CITY OF BELLEVILLE, an
Illinois Municipal Corporation;
JEFFREY VERNATTI, both in his
individual capacity and in his capacity
as a police officer for the City of
Belleville, Illinois; AARON NETEMEYER,
both in his individual capacity and his
capacity as a police officer for the City
of Belleville, Illinois; and MARK
HEFFERNAN, both in his individual
capacity and in his capacity as a police
officer for the City of Belleville, Illinois,**

**Defendants.**                                                            **No. 05-CV-572-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

On August 9, 2005, Plaintiff Bryan Joseph Schmittling ("Plaintiff") filed a complaint against the City of Belleville, Illinois ("Belleville") and Officers Jeffrey Vernatti ("Officer Vernatti"), Aaron Netemeyer ("Officer Netemeyer"), and Mark Heffernan ("Officer Heffernan") (collectively, "Defendants") individually and in their official capacities as Belleville police officers, alleging civil-rights violations under **42 U.S.C. § 1983**. (Doc. 1.) Belleville and the officers filed a motion to dismiss pursuant

to **Federal Rule of Civil Procedure 12(b)(6)** on September 9, 2005; in response, Plaintiff entered a Second Amended Complaint on October 13, 2005. (Doc. 22.) Counts I through III of Plaintiff's Second Amended Complaint arise under **42 U.S.C. § 1983**; Count IV states claims against Officer Vernatti and Belleville for battery; and Count V alleges intentional infliction of emotional distress against all Defendants. In their motion to dismiss, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted. (Doc. 12.) Plaintiff responds in opposition. (Doc. 20.) For the reasons set forth below, the Court denies Defendant's motion.

## II. Background

On December 20, 2004 Plaintiff and a passenger, Ryan Schmittling, were involved in a single-vehicle accident in St. Clair County, Illinois. (Doc. 22, Second Am. Compl., ¶ 21.) Plaintiff alleges that during the accident, his vehicle traveled down an embankment and rolled several times. (*Id.* at ¶ 22.) As a result of the accident, both Plaintiff and Schmittling suffered multiple injuries. (*Id.* at ¶ 23.)

According to Plaintiff's complaint, when his vehicle came to a resting position, he and Schmittling walked back to the road and waited for emergency assistance. (*Id.* at ¶ 24.) Officers Vernatti, Netemeyer, and Heffernan then arrived on the scene. (*Id.* at ¶ 25.) At this point, Plaintiff alleges that he requested medical assistance and gave Officer Vernatti his identification. (*Id.* at ¶ 26.) Vernatti then allegedly told Plaintiff that he was going to jail, and Plaintiff responded by placing his wrists together to facilitate cuffing. (*Id.* at ¶ 29.) Plaintiff alleges that Vernatti then

called him a "smart ass" and shot him with a Taser. (*Id.* at ¶ 30.) While Plaintiff was suffering from the Taser shock, Vernatti allegedly ordered him to lie on the ground, but Plaintiff failed to comply due to the shock he received. (*Id.* at ¶ 32.) As a result, Plaintiff alleges that Vernatti shot Plaintiff with a Taser again and ordered him to place his hands behind his back. (*Id.* at ¶¶ 33, 35.) While face-down on the ground, Plaintiff indicates that he attempted to comply, but was unable to due to pre-existing injuries to his shoulder. (*Id.*) Vernatti then allegedly applied a third Taser shock to Plaintiff for resisting arrest and forced Plaintiff's hands together behind his back for cuffing. (*Id.* at ¶ 36–37.) Plaintiff alleges that Vernatti shocked him a fourth time in response to his request for medical assistance. (*Id.* at ¶ 38.)

As a result of this incident, Plaintiff claims that, among other things, he lost consciousness and control over his bodily functions, suffered traumatic injury to his head, and suffered burn injuries. (*Id.* at ¶¶ 30-39.) Additionally, Plaintiff alleges that Officers Heffernan and Netemeyer refused to intervene or come to Plaintiff's aid and that at no time after being taken into custody did Defendants acknowledge his requests for medical assistance. (*Id.* at ¶ 45.) Finally, Plaintiff alleges that Defendants conspired to hide or alter the evidence of their conduct by preparing false police reports. (*Id.* at ¶ 28.)

Plaintiff claims these acts constituted battery and intentional infliction of emotional distress. Plaintiff additionally alleges that Defendants' conduct violated his rights under the Fourth Amendment and **42 U.S.C. § 1983**. He seeks compensatory, punitive, and exemplary damages, attorney fees and costs.

### III. Analysis

####   A.   Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim pursuant to **Federal Rule of Civil Procedure 12(b)(6)**, a court assumes as true all well-pleaded facts and reasonable inferences, and construes these in the light most favorable to the plaintiff. ***Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998)** (citing ***Wiemerslage Through Wiemerslage v. Maine Twp. High Sch. Dist. 207*, 29 F.3d 1149, 1151 (7th Cir. 1994)**). A court must determine whether, based on those assumptions and inferences, the plaintiff has a right to relief. ***Id.*** A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. ***Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)**. A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him or her to relief. ***Travel All over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir. 1996)** (citing ***Conley v. Gibson*, 355 U.S. 41, 45–46 (1957))**. "Complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule" to survive a motion to dismiss. ***Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)**.

####   B.   Plaintiff's Second Amended Complaint

Several issues raised by Defendants Memorandum in Support of Motion to Dismiss (Doc. 13) were corrected by Plaintiff's Second Amended Complaint (Doc. 22). First, Defendants moved to dismiss Counts I–III because Plaintiff erroneously

based his claims on alleged violations of Illinois constitution and statutes. (Doc 13, Part III.) Plaintiff's Second Amended Complaint, however, no longer alleges violations of state law in Counts I–III. Defendants also moved to dismiss Counts I–III because Fifth Amendment claims may only be brought against federal officials and because Plaintiff failed to state a claim under the Fourteenth Amendment. (Doc. 13, Parts IV–V.) These issues are now moot because Plaintiff no longer alleges violations of the Fifth or Fourteenth Amendments. Finally, Defendants moved to dismiss Count III due to the fact that the complaint lacks a constitutional injury. (Doc. 13, Part VIII.) Plaintiff's Second Amended Complaint cures this issue by alleging that Defendants conspired to injure Plaintiff and acted in accord with Defendants' conspiracy by injuring Plaintiff. (Doc 22, Pl. Second Am. Compl., ¶ 28.) Defendants' other grounds for dismissal remain at issue and are considered below.

### C. Section 1983: Municipal Liability

**Section 1983** provides a party with a cause of action against persons acting under color of state law who cause "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." **42 U.S.C. § 1983**. A municipality is held liable as a "person" within the meaning of this section if a municipal "policy or custom" is the cause of the constitutional violation. ***Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)**. "A municipality is not liable for the actions of an employee, however, simply because that employee committed a tortious act." ***Id.* at 691**. A plaintiff may establish a municipal policy or custom by alleging that:

> (1) the city had an express policy that, when enforced, causes a constitutional deprivation; (2) the city had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

***McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)** (citation omitted). To properly plead a claim under **section 1983** for municipal liability, a plaintiff need only include sufficient allegations to put the defendant on notice of the claims against it. *See **id. at* 325** (holding that the plaintiff's complaint, "while conclusory, is sufficient to put the City on notice of his claim against it."); ***Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)** (holding that although the plaintiff's complaint "could be improved, . . . it is intelligible and gives the defendants notice of the claim for relief.").

Here, Plaintiff rests his **section 1983** claim against Belleville on the second of the options above, alleging a Belleville "custom and practice" of deliberate indifference to the prior improper conduct of its officer. (Doc. 22, ¶ 19.) Plaintiff bases this theory of indifference on (1) Belleville's knowledge of previous allegations made by citizens and other police officers that Officer Vernatti used excessive and unconstitutional force;[1] (2) Belleville's failure to investigate such allegations; (3) Belleville's failure to discipline Vernatti; and (4) Belleville's promotion of Vernatti to

---

[1] These previous allegations were made during the Vernatti's employment with another police department. Plaintiff alleges that Belleville hired Vernatti despite its knowledge of the allegations.

"Field Training Officer" and "Certified Taser Instructor" in light of these allegations. (Doc. 22, Second Am. Compl., ¶¶ 13-20.)

Plaintiff's "custom and practice" allegation is sufficient to overcome the motion to dismiss Belleville from Counts I-III. As is required, *see* **City of Canton v. Harris, 489 U.S. 378, 385 (1989)**, Plaintiff alleges both a Belleville policy of indifference toward its officer's prior use of excessive force and a causal relationship between this policy and the injuries to Plaintiff. Plaintiff, accordingly, may be entitled to relief under the facts as alleged, which are sufficient to put Belleville on notice of the charges against it. As such, Plaintiff's municipal-liability claims against Belleville cannot be dismissed.

### D.    Section 1983 Official-Capacity Liability

Local-government officials sued in their official capacities are liable as "persons" under **section 1983** provided the relevant local government is also suable. ***Monell,* 436 U.S. at 691 n.55**. As noted above, Plaintiff's Second Amended Complaint sufficiently alleges both that Belleville had a policy of indifference to its officer's conduct and to the possible reoccurrence of such conduct, and that this indifference resulted in Plaintiff's injuries. This permits Plaintiff's **section 1983** claim to go forward against Belleville. Because Belleville is suable under this section, then, Officers Vernatti, Netemeyer, and Heffernan may be sued in their official capacities under **section 1983** as well.

### E.    Intracorporate Immunity

The intracorporate-immunity doctrine bars a conspiracy case under civil-conspiracy statutes when two or more members of an entity, pursuing lawful business and acting within the scope of their employment, act in a discriminatory or retaliatory manner. ***Travis v. Gary Comm. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)**. Under this doctrine, an entity only acts through its officers, directors, and agents, and therefore is unable to conspire with those designated to act on its behalf. *See **McCraven v. City of Chicago*, 109 F. Supp. 2d 935, 946 (N.D. Ill. 2000)** (citing ***Travis*, 921 F.2d at 110**). The intracorporate-immunity doctrine applies to private entities and government agencies alike. ***Wright v. Ill. Dept. of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994)**.

The Seventh Circuit has applied this doctrine in **28 U.S.C. § 1985** cases. ***Travis v. Gary Comm. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)**. It has not, however, extended it to claims brought under **section 1983** (such as Plaintiff's claims here). Currently, district courts in the Seventh Circuit are somewhat divided on the question of whether the intracorporate-immunity doctrine should apply in cases where it is alleged that multiple police officers conspired to harm an individual. While two district courts in this Circuit, it appears, have found that the intracorporate-immunity doctrine may apply in **section 1983** actions against police officers, *see **David v. Village of Oak Lawn*, No. 95-7368, 1996 U.S. Dist. LEXIS 5624, at \*12-13 (N.D. Ill. Apr. 29, 1996)** (Gettleman, J.) (noting that the plaintiff specifically alleged that the defendant officers acted in their official capacities

and within the scope of their employment); ***Chavez v. Illinois State Police*, No. 94-5307, 1996 U.S. Dist. LEXIS 1540 (N.D. Ill. Feb. 13, 1996)** (Manning, J.), a majority of district courts in this circuit to address the issue have found the doctrine inapplicable in **section 1983** cases involving police. S*ee **Cannon v. Burge*, No. 05-2192, 2006 U.S. Dist. LEXIS 4040 (N.D. Ill. Feb. 2, 2006)** (St. Eve, J.); ***Evans v. City of* Chicago, No. 04-3570, 2005 U.S. Dist. LEXIS 18507 (N.D. Ill. August, 29, 2005)** (Coar, J.); ***McDorman v. Smith*, No. 05-448, 2005 U.S. Dist. LEXIS 15964 (N.D. Ill. Aug. 2, 2005)** (Gettleman, J.); ***Howard v. City of Chicago*, No. 03-8481, 2004 U.S. Dist. LEXIS 21537 (N.D. Ill. Oct. 22, 2004)** (Anderson, J.); ***Hobley v. Burge* No. 03-3678, 2004 U.S. Dist. LEXIS 10228 (N.D. Ill. June 2, 2004)** (Aspen, J.); ***Williams v. Brown*, 269 F. Supp. 2d 987, 994 (N.D. Ill. 2003)** (Bucklo, J.); ***Moreno v. Town of Cicero*, No. 01-1726, 2002 U.S. Dist. LEXIS 16915 (N.D. Ill. Sept. 5, 2002)** (Leinenweber, J.); ***Newsome v. James*, No. 96-7680, 2000 U.S. Dist. LEXIS 5678 (N.D. Ill. Apr. 26, 2000)** (Plunkett, J.); ***Jefferson v. City of Harvey*, No. 98-5834, 1999 U.S. Dist. LEXIS 20158 (N.D. Ill. Jan. 5, 2000)** (Grady, J.); ***Northen v. City of Chicago*, No. 93-7013, 1999 U.S. Dist. LEXIS 7897 (N.D. Ill. May 17, 1999)** (Holderman, J.); ***Salto v. Mercado*, No. 96-7168, 1997 U.S. Dist. LEXIS 5796 (N.D. Ill. Apr. 24, 1997)** (Zagel, J.).

This Court agrees with these latter decisions. As Judge Plunkett wrote in ***James***, "the intracorporate conspiracy doctrine was created to shield corporations

and their employees form conspiracy liability for routine, collaborative business decisions . . . . " *James*, **2000 U.S. Dist. LEXIS 5678, at * 46-47**. Here, as there, the alleged conduct in question simply cannot be characterized as routine. Even if the doctrine were to apply, moreover, Defendants' alleged actions here — including a conspiracy to injure and refuse to aid Plaintiff, as well as a conspiracy to file a false police report — would be outside the scope of their employment, and thus within an exception to the intracorporate-immunity doctrine. *Hartman v. Board of Trustees of Community College Dist. No. 508*, **4 F.3d 465, 469-70 (7th Cir. 1993)**. As such, the Court does not reach the question of the applicability of the doctrine, and given the instant facts, the Court declines to dismiss Plaintiff's conspiracy claims.

### B.     Intentional Infliction of Emotional Distress

In a claim for intentional infliction of emotional distress, plaintiff must show (1) extreme and outrageous conduct by the defendant; (2) that either defendant acted with intent to cause severe emotional distress or defendant knew the conduct created a high probability of causing severe emotional distress; and (3) a causal relationship between the defendant's conduct and the plaintiff's severe emotional distress. *DuFour-Dowell v. Cogger*, **969 F. Supp. 1107, 1123 (N.D. Ill. 1997)** (citing *McGrath v. Fahey*, **533 N.E.2d 806, 809 (Ill. 1988)**). "Mere insults indignities, threats, annoyance, petty oppression or trivialities" do not meet the requirement for outrageous conduct. *Id*. To be outrageous, rather, the conduct must

"go beyond all possible bounds," *id.*, where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" ***Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994)** (quoting **RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)**). The conduct must, further, be "very extreme or cause very severe physical injury." *Id.* Extreme and outrageous conduct may arise from the actor's abuse of an authority position or a position where the actor has power to affect the victim's interests. ***Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (**citing **RESTATEMENT (SECOND) OF TORTS § 46, cmt. e (1965)).**

Here, Plaintiff alleges that after cooperating with Vernatti's attempt to arrest him by placing his hands together to facilitate cuffing, Vernatti shot Plaintiff with a Taser, causing severe pain to his pre-existing injuries. (Doc. 20, Second Am. Compl., ¶¶ 29–30.) While still recovering from the initial Taser shock, Plaintiff was unable to comply with Vernatti's demands that he lie on the ground. (*Id.* at ¶ 32.) As a result, Plaintiff alleges Vernatti administered a second Taser shock to the Plaintiff. (*Id.* at ¶ 33.) Thereafter, while lying on the ground, Plaintiff was ordered to put his hands behind his back. Plaintiff placed his left hand behind his back, but was unable to move his right arm due to a pre-existing fracture in his shoulder, resulting in a third Taser shock. (*Id.* at ¶¶ 35–36.) After this shock ended, Vernatti allegedly forced Plaintiff's right hand and arm behind his back for cuffing, causing additional pain to the pre-existing injury. (*Id.* at ¶ 37.) Plaintiff alleges that after cuffing the

Plaintiff,Vernatti again applied a Taser shock to the Plaintiff in response to Plaintiff's request for medical assistance.  (*Id.* at ¶ 38.)  The fourth and final shock caused Plaintiff to lose consciousness and bodily control, resulting in involuntary loss of bowels. (*Id.* at ¶.)  After Plaintiff regained consciousness, Vernatti escorted Plaintiff to a patrol car, where, as Plaintiff was attempting to step into the vehicle, Vernatti allegedly slammed Plaintiff's head into the roof.  (*Id.* at ¶ 41.)  Plaintiff alleges that during the course of events, Officers Netemeyer and Heffernan stood nearby watching and failed to aid Plaintiff.  (*Id.* at ¶ 42.)

Viewing these facts in a light most favorable to Plaintiff, Plaintiff's complaint must survive Defendants' motion to dismiss.   Application of four Taser shocks when Plaintiff was cooperating or attempting to cooperate with the Officer's demands, taken as true as the Court must, is excessive and outrageous. Additionally, the officers' failure to aid Plaintiff both during the Taser shots as well as at the police station, and the omission of such events in police records could be considered outrageous.  While the Court recognizes that some of Plaintiff's injuries were a preexisting result of the vehicle accident, Plaintiff also alleges to have suffered pain, loss of consciousness, loss of bodily control, and burn injuries as a result of the excessive Taser shots, head trauma as a result of Officer Vernatti's conduct while escorting Plaintiff to the patrol vehicle, and emotional distress as a result of the entire course of events. (*Id.* at ¶ 46.)  These allegations exceed the threshold for extreme and outrageous conduct.

## IV. Conclusion

Therefore, for the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss pursuant to **Federal Rule of Civil Procedure 12(b)(6).**

**IT IS SO ORDERED.**

Signed this 10th day of May, 2006.

/s/        David RHerndon
**United States District Judge**